UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KENNETH LEE WATKINS,

Plaintiff,

v.

KOOTENAI COUNTY SHERIFF'S OFFICE; ROBERT B. NORRIS; and BRETT A. NELSON,

Defendants.

Case No. 1:22-cv-00338-DCN

**MEMORANDUM DECISION AND ORDER**

Plaintiff Kenneth Lee Watkins is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). According to Plaintiff's verified complaint, while Plaintiff was a pretrial detainee in the Kootenai County Jail, he was subjected to extremely cold cell temperatures and he was not provided with sufficient clothing or bedding to withstand those temperatures. *Compl*., Dkt. 1, at 3–5.[1]

Plaintiff has been allowed to proceed on due process claims under 42 U.S.C. § 1983, based on the allegedly cold cell temperatures, against Defendants Kootenai County Sheriff's Office, Kootentai County Sheriff Robert B. Norris, and Kootenai County Undersheriff Brett A. Nelson. *See Init. Rev. Order*, Dkt. 5.

Defendants have filed a Motion for Summary Judgment, which is now ripe for

[1] In August 2023, Plaintiff submitted an amended complaint, which purports to add claims and defendants. *See* Dkt. 21. However, Plaintiff did not seek leave to amend as required by Federal Rule of Civil Procedure 15(a)(2). Therefore, Plaintiff's initial complaint remains the operative complaint in this case, and Plaintiff's arguments regarding claims of breach of contract, negligence, fraud, unsanitary meals, verbal harassment, and denial of telephone and commissary privileges are irrelevant. *See* Dkt. 48 at 6–14.

adjudication. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1(d).

For the reasons that follow, the Court concludes that Defendants are entitled to judgment as a matter of law because Plaintiff was not subjected to unconstitutional conditions of detention. Thus, the Court will grant Defendants' Motion for Summary Judgment.

**1. Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

In resolving a summary judgment motion, the Court must consider the facts in the light most favorable to the non-moving party, unless the non-moving party's version of the facts is "blatantly contradicted by the record[] so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). If such a blatant contradiction exists, then there is no "genuine" dispute as to that fact. *Id*.

The moving party bears the initial burden to show that each material fact cannot be

disputed. Material facts are those "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Id*. at 247–48. Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact.

To show that the material facts are not in dispute, the moving party may cite to particular parts of materials in the record or show that the nonmoving party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). Where, as here, the party moving for summary judgment would not bear the burden of proof at trial, that party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

If the moving party meets this initial responsibility, the burden then shifts to the non-moving party to establish that a genuine dispute as to any material fact does indeed exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Instead, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The Court must consider "the cited materials" in considering a motion for summary judgment, but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029

(9th Cir. 2001) (internal quotation marks omitted). Rather, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

That is, "if a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own." *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). If the plaintiff fails to produce evidence, or if the evidence produced is insufficient, the Court "is not required (or even allowed) to assume the truth of the challenged allegations in the complaint." *Id*. A verified complaint by a pro se prisoner "may be treated as an affidavit to oppose summary judgment," but only "to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (quoting *McElyea v. Babbitt,* 833 F.2d 196, 197–98 & n. 1 (9th Cir.1987)). Statements in a brief, unsupported by the record, cannot be used to create a dispute of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court must grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set

forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in the light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

In cases involving pro se inmates, courts liberally construe the pleadings and briefs and "should avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, although pro se inmates are exempted "from *strict* compliance with the summary judgment rules," they are not exempted "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In opposing a motion for summary judgment, a pro se inmate must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 872, 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

**2. Factual Background**

Plaintiff was detained in the Kootenai County Jail from August 5, 2021 until February 9, 2022. *Decl. of Jeremy Hyle* ("*Hyle Decl.*"), Dkt. 36-3, ¶ 3. Kootenai County Jail inmates are issued a "standard set of clothing," which includes pants, shirts, and underwear. Additional clothing items such as undershirts and heavy socks are available for purchase at the jail commissary. *Id.* ¶ 18. Inmates also receive sheets and blankets for bedding.

According to Jeremy Hyle, the Jail Bureau Commander for the Kootenai County Jail, the Kootenai County Sheriff's Office manages the jail pursuant to Idaho Jail Standards. *Id.* ¶ 5. These standards require that cell temperatures remain between 65 degrees and 85 degrees Fahrenheit. *Id.; Ex. 1 to Hyle Decl.*

The jail temperature is monitored daily to ensure it remains within this range. If the temperature is not within this range, that fact is documented in jail records. *Hyle Decl.* ¶ 16. Additionally, if an inmate complains of the temperature, jail staff perform a temperature check of the inmate's "pod," or housing unit. *Id.* ¶ 13. These checks measure the temperature of "the air coming from the HVAC system and the temperature of the area in question." *Id.* If the temperature is below 65 degrees, inmates are issued extra blankets or moved to another, warmer pod until maintenance staff can fix the temperature problem. *Id.* ¶ 17.

Jail records reflect that on three dates during Plaintiff's detention, jail staff conducted temperature checks of the pods after Plaintiff complained of cold temperatures. On the first of these occasions, November 28, 2021, the temperature check revealed that the temperature was within the range required by jail standards. *Id.* ¶¶ 14–15 and *Ex. 11*, Dkt. 36-3 at 75–76. That is, the temperature was no colder than 65 degrees. Despite the temperature being within jail standards at these times, Plaintiff was issued an extra blanket and informed that he could purchase additional clothing items from the commissary. *Id.* ¶ 22.

However, on December 4 and 5, 2021, the temperature check showed that the cells were colder than normal—that is, the temperature was below 65 degrees. On those two

dates, the inmates were given extra blankets to keep them warm while maintenance worked to fix the problem. *Id*. ¶¶ 14–15 *and Ex. 11*, Dkt. 36-3 at 77–79.

Jail Bureau Commander Hyle states that, if there were any other dates when cell temperatures dropped below the acceptable range, it would have been documented as part of the jail's regularly conducted business activity. *Hyle Decl*. ¶ 16. The record does not reflect that cell temperatures were below 65 degrees on any date while Plaintiff was detained other than on December 4 and 5, 2021. *See* Fed. R. Civ. P. 803(7) (classifying as non-hearsay the absence of a record of a regularly conducted activity if certain criteria are met).

In the Complaint, however, Plaintiff claims cell temperatures were "frequently" as low as 33 degrees as a result of cracked windows. *Compl*. at 3–5. Plaintiff does not explain how he measured the temperature of the cells on these unidentified dates and, thus, does not explain the basis for his personal knowledge of the temperature.

Despite Plaintiff's claims of near-freezing temperatures, he never once purchased additional clothing items, such as an undershirt or heavy socks, while he was detained in the Kootenai County Jail. *Hyle Decl*. ¶ 20. Plaintiff did, however, purchase over $939 worth of other goods from the jail commissary. *Id*.

Additionally, according to Plaintiff's medical records, he was evaluated by medical personnel on multiple occasions for, among other things, complaints of being cold. The records reveal that, at all these examinations, Plaintiff's vital signs were normal, his temperature was between 97.5 and 98.5 degrees, and Plaintiff's skin was warm and dry. *Hyle Decl*. ¶¶ 12, 21 *and Ex. 2 through 9*. Plaintiff's medical records do not contain any

evidence that Plaintiff suffered any physical injuries, such as hypothermia, as a result of the allegedly near-freezing cell temperatures. *Id*.

## 3. Discussion

### *A. Standards of Law Applicable to Plaintiff's Claims*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

That is, jail officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

To bring a § 1983 claim against a local governmental entity such as the Kootenai County Sheriff's Office, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by

*Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Because Plaintiff was a pretrial detainee when his claims arose, his conditions-of-detention claims are analyzed under the Due Process Clause of the Fourteenth Amendment. With respect to pretrial detainees, jail conditions violate due process if those conditions amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Defendants recognize that Plaintiff's claims arise under the Due Process Clause, but they go on to discuss Eighth Amendment cases, contending that the standards for conditions-of-confinement claims are the same under both constitutional provisions. *See Memo. in Supp.*, Dkt. 36-1, at 5–7. Though this was once the law in the Ninth Circuit, it is no longer so. *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010),

*overruled by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

Instead, pretrial detainees' conditions-of-detention claims are analyzed using a standard of "objective deliberate indifference." *Gordon v. County of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Under that standard, a detainee must establish the following elements:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. The application of this standard "will necessarily turn on the facts and circumstances of each particular case." *Id*. (internal quotation marks and alteration omitted).

The objective deliberate indifference standard is similar to the objective prong of an Eighth Amendment analysis. *Compare id. with Farmer v. Brennan*, 511 U.S. 825, 834, 844 (1994). The primary difference between conditions-of-confinement claims brought by convicted prisoners and those brought by pretrial detainees is that an Eighth Amendment claim asserted by a prisoner includes a subjective component. *See Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (subjective deliberate indifference under Eighth Amendment requires that defendant not only be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" but "must also draw the

inference") (internal quotation marks omitted). A due process claim brought by a pretrial detainee does not. *See Gordon*, 888 F.3d at 1124–25.

### *B. Defendants Are Entitled to Summary Judgment*

As explained below, the record shows that, as a matter of law, Defendants did not act with objective deliberate indifference to a substantial risk of serious harm from cold cell temperatures.

Jail Bureau Commander Hyle declares that the jail temperatures are monitored daily and, if they fall below the normal range, that fact is documented in the jail records as a part of the jail's regularly conducted activity. Also, temperature checks of housing units are conducted whenever an inmate complains of the temperature. The only records of temperatures below 65 degrees during Plaintiff's detention are those generated on December 4, and 5, 2021.

Under Federal Rule of Evidence 803(7), the absence of a record of a regularly conducted activity is admissible as non-hearsay if "(A) the evidence is admitted to prove that the matter did not occur or exist; (B) a record was regularly kept for a matter of that kind; and (C) the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness." Here, the first two requirements are satisfied because (1) a record of cold temperatures is regularly made if the temperature falls below 65 degrees, and (2) the evidence of the absence of the record is offered to prove that the cells were not below 65 degrees on any dates other than December 4 and 5, 2021.

The third requirement is also satisfied because Plaintiff has not established that the source of the information on cell temperatures is not trustworthy. Plaintiff complains that

there are no records of the regular temperature checks. However, as just explained, the absence of those records is itself admissible evidence that the temperature was below 65 degrees only on December 4 and 5, 2021. *See* Fed. R. Evid. 803(7).

Accordingly, Defendants have shown that the temperature was below 65 degrees only on December 4, and 5, 2021. Notwithstanding Plaintiff's failure to explain the basis of his personal knowledge that the temperature was as low as 33 degrees, the Court will assume, for purpose of this decision, that the temperature of the cells December 4 and 5 was somewhere between 33 and 64 degrees.

On these two occasions, jail staff issued extra blankets to the inmates, including to Plaintiff. The provision of extra blankets was a reasonable response to the risk the inmates faced from cold cell temperatures. *See Gordon*, 888 F.3d at 1125 (stating that objective deliberate indifference requires that the jail official "did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved").

Jail staff also informed Plaintiff that he could purchase extra clothing at the commissary, but Plaintiff did not do so—even though he had the money to do so. Finally, the record is also devoid of any evidence that Plaintiff suffered injuries from cold temperatures on December 4 or 5, 2021, or, indeed, on any date during his detention in the Kootenai County Jail.

Defendants have met their initial burden of showing that, even assuming that Plaintiff was placed at a substantial risk of serious harm on these two occasions, they did not act with objective deliberate indifference. The burden thus shifts to Plaintiff to establish

the existence of a genuine dispute of material fact. Plaintiff has failed to do so.

As an initial matter, the Court rejects Plaintiff's assertion that he has presented "extensive evidence" to defeat Defendants' Motion for Summary Judgment. Dkt. 48 at 2. Indeed, the *only* evidence Plaintiff has submitted are the allegations in his verified complaint, to the extent those allegations are based on Plaintiff's personal knowledge and set forth facts that are admissible in evidence. *See Keenan*, 83 F.3d at 1090 n.1. Plaintiff's statements in his response brief are insufficient to create a genuine factual dispute. *See Barnes*, 64 F.3d at 1396 n.3.

As revealed by the allegations in the complaint, the only potentially material factual dispute is the number of occasions on which cell temperatures were between 33 and 64 degrees. The evidence provided by Defendants establishes that this occurred only on December 4 and 5, 2021. On the other hand, Plaintiff's complaint asserts that cell temperatures were "frequently" below the acceptable range. *Compl*. at 3–5.

The complaint's vague use of the word "frequently" does not overcome the record evidence that the cells were cold only on two dates in December 2021. *See Scott*, 550 U.S. at 380. Thus, any dispute as to the number of occasions the cells were cold is not genuine.

Plaintiff also has failed to raise a genuine dispute of material fact as to the jail's response to cold cell temperatures. That is, taking the evidence in the light most favorable to Plaintiff, a factfinder could not reasonably infer that the jail's provision of extra blankets on December 4 and 5, 2021, was unreasonable. *See Gordon*, 888 F.3d at 1125. Simply put, there is no admissible evidence in the record to suggest that any Defendant failed to reasonably address a substantial risk of serious harm to Plaintiff from cold cell

temperatures.

**4. Conclusion**

For the foregoing reasons, Defendants are entitled to summary judgment.

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's Motion for Extension of Time (Dkt. 47) is GRANTED, and Plaintiff's response to the Motion for Summary Judgment is deemed timely.

2. Defendants' Motion for Summary Judgment (Dkt. 36) is GRANTED, and judgment will be entered in favor of Defendants.

3. Plaintiff's Motion for Injunction Against Transporting or Holding Kenneth Watkins in Kootenai County Jail and Conducting Trial in Kootenai County (Dkt. 43) is DENIED AS MOOT.

UNITED STATES COURTS DISTRICT OF IDAHO

DATED: May 20, 2025

David C. Nye
Chief U.S. District Court Judge