UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTON BALLARD,<br><br>                          Plaintiff,<br><br>v.<br><br>IDOC and CORIZON MEDICAL,<br><br>                          Defendants. | Case No. 4:24-cv-00579-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Weston Ballard is an inmate in the Bannock County Jail. The Court is required to review inmate complaints under 28 U.S.C. § 1915A(b) and must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

## 1.    Standards of Law for Screening Complaints

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken

as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Moreover, even if a complaint meets the pleading requirements, dismissal under § 1915A is still appropriate if an affirmative defense, such as untimeliness, is an "obvious bar to securing relief on the face of the complaint." *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (internal quotation marks omitted).

## 2.    Factual Allegations

Plaintiff complains of conditions of confinement when he was a prisoner in the custody of the Idaho Department of Correction ("IDOC") in 2021 and 2022. *Compl.*, Dkt. 1, at 2. Specifically, Plaintiff claims that in July 2021 and February 2022, he was attacked several times by other inmates. Plaintiff alleges that unidentified prison officials moved him out of protective custody despite knowing that Plaintiff was at risk of attack. *Id.* at 4.

Plaintiff also complains that he was not provided with adequate medical treatment because he was not taken to the hospital after these attacks. *Id*. at 6.

In November 2021, Plaintiff made a "shank" to protect himself. Plaintiff turned the weapon over to prison staff, but he contends he had a right to this weapon so that he could defend himself from other inmates. *Id*. at 5.

In addition to claiming that his conditions of confinement were unconstitutional, Plaintiff also asserts claims related to the conviction for which Plaintiff was incarcerated. Plaintiff claims the prosecutor and judge were unethical and committed misconduct and that Plaintiff's public defender did not provide him with effective assistance of counsel. *Id*. at 6–7.

Plaintiff also claims that an Idaho state court engaged in "bad faith handling" of Plaintiff's state court civil rights lawsuit. *Id*. at 7.

Plaintiff names as Defendants the IDOC and Corizon Medical, the private entity that at one time provided Idaho inmates with medical care under contract with the IDOC. The body of the Complaint appears to suggest that Plaintiff also intended to name as defendants his criminal defense attorney, as well as the prosecutor and the judge in his criminal case.

Plaintiff asserts violations of the Second, Seventh, Eighth, Ninth, and Fourteenth Amendments to the Constitution. *Id*. at 1, 5. He seeks monetary damages.

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

## 3.    Discussion

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

To bring a § 1983 claim against a local governmental entity or a private entity performing a government function—such as Corizon—a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against such an entity are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). An entity also "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority" or when "such an official ratified a

subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### A.    *Plaintiff's Conditions-of-Confinement Claims Appear Untimely*

The statute of limitation period for filing a civil rights suit under § 1983 is the statute of limitation period for personal injuries in the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). In Idaho, that limitations period is two years. Idaho Code § 5-219.

Although the state statute of limitations governs the time period for filing a § 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of Union City*, 25 F.3d 800, 801–02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when

the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*.

If a plaintiff cannot show that his claim accrued during the statute of limitations period, he still may file a lawsuit beyond the limitations deadline if he can show that the statute should have been tolled (or paused) for a certain period of time during the deadline period within which he should have filed the lawsuit. Pursuant to the Prison Litigation Reform Act ("PLRA"), the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005).

In addition to tolling under the PLRA, state tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975). Idaho law allows for statutory tolling of the statute of limitations for a person's juvenile status or insanity. Idaho Code § 5-230. However, because the Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

The doctrine of equitable *estoppel*, however, is available in Idaho. While it "does not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar,

although the time limit of the statute may have already run." *J.R. Simplot Co. v. Chemetics International, Inc.*, 887 P.2d 1039, 1042 (Idaho 1994), *abrogated in part on other grounds by Day as Tr. of Tr. B of Donald M. Day & Marjorie D. Day Fam. Tr. v. Transportation Dep't*, 166 Idaho 293, 301, 458 P.3d 162, 170 (Idaho 2020).

Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id.*

Plaintiffs' conditions-of-confinement claims arose during 2021 and 2022, when Plaintiff was in IDOC custody. The latest date set forth in the Complaint as to when any claim arose is February 2022. Considering that the administrative grievance process generally takes 30 days to exhaust, it would appear that Plaintiff would have had to file the Complaint in this case no later than March 2024. However, the Complaint was not filed until December 3, 2024.[1] If Plaintiff files an amended complaint, he must explain why he

---

[1] Plaintiff is not entitled to the benefit of the mailbox rule, which provides that, in certain circumstances, a legal document is deemed filed on the date an inmate delivers it to prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights actions). The certificate of service for the Complaint reveals that Plaintiff used the U.S. Postal Service to file the Complaint, rather than handing the complaint to jail authorities for filing by mail. *See Compl.* at 8. Accordingly, the mailbox rule does not apply. *Wall v. Davis*, No. 1:21-CV-00445-DCN, 2023 WL 2744096, at *2 n.2 (D. Idaho Mar. 31, 2023), *certificate of appealability denied*, No. 23-35308, 2024 WL 1925987 (9th Cir. Feb. 1, 2024) (unpublished) ("[I]f the prisoner uses a U.S. Postal Service repository rather than handing the filing to prison officials, he is not entitled to the mailbox rule.").

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

believes his claims are not subject to dismissal as untimely.[2]

### B.    Plaintiff's Claims Regarding His State Criminal Case

Plaintiff's claims challenging his state criminal proceedings are implausible for the following reasons.

### i.    *Heck v. Humphrey*

In *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) the United States Supreme Court held that a civil rights claim "is not cognizable under § 1983" if the plaintiff's success on that claim would "render a conviction or sentence invalid." *Id*. at. That is, if a favorable verdict in a civil rights action "would necessarily imply the invalidity" of the plaintiff's conviction, the plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id*. at 487. As the Supreme Court has clarified, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*,

---

[2] The fact that Plaintiff filed a state court lawsuit presenting similar claims in July 2022 does not render his claims in this case timely. *See Compl*. at 3. There is no federal basis for tolling the statute of limitation during the period of a plaintiff's state court litigation because § 1983 does not require plaintiffs to litigate their claims in state court before seeking a federal civil rights remedy. Rather, the opposite is true: "Unless that [federal] remedy is structured to require previous resort to state proceedings, so that the claim may not even be maintained in federal court unless such resort be had, it cannot be assumed that Congress wishes to hold open the independent federal remedy during any period of time necessary to pursue alternative state-court remedies." *Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 490–91 (1980) (internal citation omitted). Further, the Court is aware of no provision of Idaho state law that would permit tolling in such a circumstance.

544 U.S. 74, 81–82 (2005).

Here, if Plaintiff were to succeed on his claims that his constitutional rights were violated in his state court criminal proceedings, that success would necessarily imply the invalidity of the conviction for which Plaintiff was incarcerated. Because the Complaint does not establish that the criminal proceedings against Plaintiff were terminated in his favor, the Complaint fails to state a claim upon which relief may be granted with respect to Plaintiff's claims challenging those proceedings.

### ii.    Judicial and Prosecutorial Immunity

Judges have long been accorded absolute immunity from damages actions arising out of judicial acts taken within the jurisdiction of their courts. *See Wyatt v. Cole*, 504 U.S. 158 (1992); *Bradley v. Fisher*, 80 U.S. 335 (1871). Section 1983 did not abolish the doctrine of judicial immunity. *Pierson v. Ray*, 386 U.S. 547, 554–55 (1967).

Judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the Plaintiff." *Cleavinger v. Saxner*, 474 U.S. 193 (1985) (quoting *Bradley*, 80 U.S. at 347). Absolute immunity for judicial officers "is justified and defined by the functions it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, 227 (1988). "[J]udicial immunity is not overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Indeed, judicial immunity is not lost even if the judge conspired with a prosecutor "to predetermine the outcome of a judicial proceeding." *Asheiman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc).

There are two circumstances in which absolute judicial immunity does not apply.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

First, a judge is not immune from liability for performing an act that is not "judicial" in nature. *Stump v. Sparkman*, 435 U.S. 349, 360 (1978). For example, a judge who leaves the bench and uses physical force to evict a person from the courtroom is engaged in a nonjudicial act and, thus, is not immune from liability. *Gregory v. Thompson*, 500 F.2d 59, 63 (9th Cir. 1974). But a judge who orders officers to forcibly seize a person *is* immune, because a "judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge." *Mireles*, 502 U.S. at 12.

Second, absolute immunity does not apply when a judge acts "in the clear absence of all jurisdiction." *Stump*, 435 U.S. at 356 (internal citations omitted). The scope of a judge's jurisdiction "must be construed broadly…. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his [or her] authority." *Id*. The question of whether a judge acted in the clear absence of jurisdiction is distinct from the question of whether a judge acted in excess of authority. Even if a judge exceeds his or her authority in issuing a ruling, that judge is immune so long as the case is properly before the court. *Mireles*, 502 U.S. at 13.

The difference between acting in the absence of jurisdiction (no immunity) and acting in excess of authority (immunity) is made clear in the following example:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Stump*, 435 U.S. at 357 n.7.

Prosecutors have absolute immunity for any actions taken in the performance of an integral part of the criminal judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Such actions include initiating and pursuing a criminal prosecution, *id.* at 410, preparing and filing charging documents, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), participating in hearings, and "making false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991).

Prosecutors are not absolutely immune if they conduct their own investigations, if they fabricate evidence, or if they elicit known false evidence for use in a prosecution. *See Milstein v. Cooley*, 257 F.3d 1004, 1011 (9th Cir. 2001). Absolute prosecutorial immunity does extend, however, to "the knowing use of false testimony at trial, the suppression of exculpatory evidence, and malicious prosecution." *Id.* at 1008; *see Broam v. Bogan*, 320 F.3d 1023, 1029–30 (9th Cir. 2003). If a prosecutor is not entitled to absolute immunity, the prosecutor may still be entitled to qualified immunity, which insulates governmental actors from liability for money damages other than "the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).

Plaintiff's claims against the state court judge and prosecutor in Plaintiff's criminal case appear barred by the doctrines of judicial and prosecutorial immunity. Plaintiff should keep the above standards in mind if he amends the Complaint.

### iii.    State Action Requirement

As stated above, § 1983 provides a remedy for statutory or constitutional violations committed by persons acting *under color of state law*. "[A] public defender does not act

under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981). Indeed, a defense attorney "is not acting on behalf of the State; he is the State's *adversary*." *Id.* at 322 n.13 (emphasis added). Thus, Plaintiff's claims against his criminal defense attorney are implausible.

### C.    Claims Against the IDOC

Plaintiff's claims against the IDOC are implausible for two reasons. First, states and state entities are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Second, even if the IDOC were a "person" for purposes of § 1983, it would be immune from suit in federal court under the Eleventh Amendment. *Hans v. Louisiana*, 134 U.S. 1, 16–18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Quern v. Jordan*, 440 U.S. 332, 342–44 (1979) (holding that § 1983 does not waive state sovereign immunity); *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (holding that Idaho itself has not waived state sovereign immunity for constitutional claims).

### D.    Claims Against Corizon

Plaintiff's claims against Corizon are also implausible. The Complaint contains no allegations suggesting that any of Plaintiff's allegedly inadequate medical treatment was the result of a policy, custom, or practice of Corizon. *See Monell*, 436 U.S. at 694; *Mabe*, 237 F.3d at 1110–11.

### E.    Other Deficiencies in the Complaint

Even if Plaintiff's claims were not subject to dismissal for the foregoing reasons,

the Complaint still would fail to state a claim upon which relief may be granted. The Court will discuss each of Plaintiff's claims below.

### i.    Second Amendment Claims

Plaintiff alleges that, under the Second Amendment, he was entitled to keep a shank in his cell to protect himself from attack by other inmates.

The Second Amendment protects an individual's "right to keep and bear arms for the purpose of self-defense." *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010). But that right is not unlimited. For example, the Second Amendment does not preclude "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *District of Columbia v. Heller*, 554 U.S. 570, 626–27 (2008).

The Court has found no legal precedent suggesting that prohibiting an inmate from keeping a weapon violates the Second Amendment. Indeed, the safety and security of inmates and prison personnel require that inmates *not* be permitted to have weapons. If a state may constitutionally prohibit a felon from possessing a firearm, so too may a state constitutionally prohibit a prisoner from possessing a shank. Plaintiff's Second Amendment claims are implausible.

### ii.    Seventh Amendment Claims

The Seventh Amendment protects the right to a jury trial in federal civil cases. This right is not implicated by the allegations in Plaintiff's Complaint, and his Seventh Amendment claims are therefore implausible.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

iii.    Eighth Amendment Claims

The Eighth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects prisoners against cruel and unusual punishment and guarantees the right to minimally adequate conditions of confinement. "[T]he Constitution does not mandate comfortable prisons, and prisons … which house persons convicted of serious crimes[] cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, though prison conditions may be restrictive—even harsh—without violating the Eighth Amendment, prison officials are required to provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Id.* at 347; *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

To state a claim under the Eighth Amendment, a prisoner must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

As for the objective prong of the analysis, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment

scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, the deprivation alleged must be objectively sufficiently harmful or, in other words, sufficiently "grave" or "serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.") (internal quotation marks and alteration omitted).

With respect to the subjective prong of an Eighth Amendment violation, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319.

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d 1060. Moreover, even prison officials who *did* actually know of a substantial risk to inmate health or safety will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

If an inmate faces a "threat of serious harm or injury" from another inmate, prison

INITIAL REVIEW ORDER BY SCREENING JUDGE - 15

officials who act with deliberate indifference to that threat are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *see also Farmer*, 511 U.S. at 833 ("Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.") (internal citation and alterations omitted). Deliberate indifference in the context of a failure-to-protect claim does not require that a prison official knew the plaintiff "was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. However, the deliberate indifference standard *does* mean that even an obvious and substantial risk of assault by one inmate against another does not result in liability so long as the defendant official was not subjectively aware of that risk. *Id*. at 844.

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has defined a "serious medical need" in the following ways:

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16

> failure to treat a prisoner's condition [that] could result in
> further significant injury or the unnecessary and wanton
> infliction of pain[;] ... [t]he existence of an injury that a
> reasonable doctor or patient would find important and worthy
> of comment or treatment; the presence of a medical condition
> that significantly affects an individual's daily activities; or the
> existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

(en banc).

In the medical context, deliberate indifference can be "manifested by prison doctors

in their response to the prisoner's needs or by prison guards in intentionally denying or

delaying access to medical care or intentionally interfering with the treatment once

prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). That is, a delay in medical

treatment can violate an inmate's right to adequate prison medical care. However, an

inmate asserting an Eighth Amendment violation must establish that the delay caused

further harm. *McGuckin*, 974 F.2d at 1060.

Medical malpractice or negligence does not support a cause of action under the

Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per

curiam). Additionally, there is no constitutional right to an outside medical provider of

one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison

inmate has no independent constitutional right to outside medical care additional and

supplemental to the medical care provided by the prison staff within the institution.").

Plaintiff's failure-to-protect claims are implausible because he does not identify a

single prison official who might have subjectively understood that Plaintiff faced a risk of

INITIAL REVIEW ORDER BY SCREENING JUDGE - 17

attack yet deliberately disregarded that risk. Plaintiff's medical treatment claims are implausible for the same reason—the Complaint does not allege that any medical provider or prison official acted with deliberate indifference to Plaintiff's serious medical needs.

### iv.      Ninth Amendment Claims

Plaintiff also relies on the Ninth Amendment as a basis for his claims. That amendment provides that "[t]he enumeration in the Constitution[] of certain rights[] shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX.

But the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). Accordingly, Plaintiff's Ninth Amendment claims are implausible.

### v.      Fourteenth Amendment Claims

Finally, Plaintiff asserts a Fourteenth Amendment claim that the Idaho state court failed to properly handle a civil rights lawsuit.

Prisoners have a right to access the courts under the First and Fourteenth Amendments. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). To state a viable access-to-courts claim, a plaintiff must plausibly allege that he suffered an actual injury as a result of the defendant's actions. *Lewis*, 518 U.S. at 349. Actual injury may be manifest if the alleged denial of access "hindered [the plaintiff's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so

INITIAL REVIEW ORDER BY SCREENING JUDGE - 18

stymied by [the defendants' actions] that he was unable even to file a complaint." *Id.* at 351.

The Constitution does not require that inmates "be able to conduct generalized research," nor does it "guarantee inmates the wherewithal to transform themselves into litigating engines." *Id*. at 355, 360. Rather, the right of access to the courts requires only that inmates "be able to *present* their grievances to the courts—a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360 (emphasis added). That is, there is no constitutional right for a prisoner to be able "to litigate effectively once in court." *Id*. at 354 (emphasis omitted). Moreover, a plaintiff cannot state an access to courts claim by alleging that a negligent act by a government official caused the actual injury of which the plaintiff complains. *Krug v. Lewis*, 852 F.2d 571 (Table), 1988 WL 74699, *1 (9th Cir. July 6, 1988) ("While prisoners have a due process right of access to the courts, the negligent act of a public official does not violate that right.") (unpublished) (citing *Daniels v. Williams*, 474 U.S. 327, 333 (1986)).

Claims of denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (a forward-looking access claim) or from the loss of a suit that now cannot be pursued (a backward-looking access claim). *Christopher v. Harbury*, 536 U.S. 403, 413–15 (2002). A complaint alleging a denial of access to the courts must plausibly allege that the plaintiff suffered, or will suffer, the loss of a past or present litigating opportunity. The plaintiff must assert facts supporting three elements: (1) official acts that frustrated the inmate's litigation activities; (2) the loss (or expected loss) of a "nonfrivolous" or "arguable" underlying claim that must be set forth in the federal

complaint, including the level of detail necessary "as if it were being independently pursued"; and (3) that the remedy sought through the access to courts claim is not otherwise available in another suit that could be brought. *Id.* at 415–17. "There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element." *Id.* at 415.

The Complaint fails to state a plausible access-to-courts claim for three reasons. First, Plaintiff does not set forth the claims he was pursuing in the lawsuit he alleges was improperly handled. *See Christopher*, 536 U.S. at 417. Second, Plaintiff does not identify any Defendant who allegedly improperly handled the suit or how that suit was improperly handled. Third, Plaintiff's claim that the state court engaged in "bad faith" is woefully vague and unsupported by any allegations in the Complaint.

## 4.    Standards for Amended Complaint

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. § 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a

complaint suffice if it tenders naked assertions devoid of further factual enhancement.")
(internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the
following: (1) the name of the person or entity that caused the alleged deprivation of
Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as
state employment or a state contract) or a private entity performing a state function; (3) the
dates on which the conduct of the defendant allegedly took place; (4) the specific conduct
or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory
provision Plaintiff alleges has been violated; (6) facts alleging the elements of the violation
are met—for example, Plaintiff must allege facts satisfying the elements of an Eighth
Amendment claim; (7) the injury or damages Plaintiff personally suffered; and (8) the
particular type of relief Plaintiff is seeking from each defendant. In addition, Plaintiff must
include facts showing that Plaintiff's claims are timely, that they are not barred by *Heck*,
and that they satisfy the *Monell* requirements, as explained above.

Further, any amended complaint must contain all of Plaintiff's allegations in a single
pleading and cannot rely upon, attach, or incorporate by reference other pleadings or
documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed
as a matter of course or upon a motion to amend, must reproduce the entire pleading as
amended. The proposed amended pleading must be submitted at the time of filing a motion
to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An]
amended complaint supersedes the original, the latter being treated thereafter as non-
existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896,

INITIAL REVIEW ORDER BY SCREENING JUDGE - 21

(9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as an "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.    The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer

intends to pursue this case.[3]

2.    If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice for failure to state a claim upon which relief may be granted, failure to prosecute, or failure to comply with a Court order. *See* 28 U.S.C. § 1915A; Fed. R. Civ. P. 41(b).

DATED: May 20, 2025

David C. Nye
Chief U.S. District Court Judge

---

[3] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).